1

2
**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)

3
555 12th Street, Suite 1600
Oakland, CA 94607

4
Tel.: (415) 445-4003
Fax: (415) 445-4020

5
lweaver@bfalaw.com

6
*Counsel for Plaintiffs and the Proposed Class*

7
[Additional Counsel Listed on Signature Page]

8

9
UNITED STATES DISTRICT COURT

10
NORTHERN DISTRICT OF CALIFORNIA

11

12
COLE COLEMAN, BRUCE COLETTA,
DAVID DIORIO, ROBERT JACOBSON-

13
DUTEIL, BRIANNA LEE, CRISTIN
TROSIEN, and MICHELE WILLIAMS,

14
individually, and on behalf of all others
similarly situated,

15

16
Plaintiff,

17
v.

18
TOYOTA MOTOR SALES, U.S.A., INC.,
a Texas corporation; and TOYOTA

19
MOTOR NORTH AMERICA, INC., a
Texas corporation,

20

21
Defendants.

Case No.: 3:20-cv-01663

<u>CLASS ACTION</u>

**CLASS ACTION COMPLAINT**

<u>DEMAND FOR JURY TRIAL</u>

22

23

24

25

26

27

28

Plaintiffs Cole Coleman, Bruce Coletta, David DiOrio, Robert Jacobson-Duteil, Brianna Lee, Cristin Trosien, and Michele Williams ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. (collectively, "Toyota" or "Defendants"), and allege as follows based on investigation of counsel and information and belief:

## NATURE OF THE CASE

1.      Toyota manufactures a vehicle called the RAV4 Hybrid (the "RAV4"). 2019 and 2020 model year RAV4 Hybrids (the "Class Vehicles") are equipped with a defective fuel tank system. In the standard promotional and marketing materials that it distributes in California and throughout the United States, Toyota advertises the fuel tank as having a capacity of 14.5 gallons. But the fuel tank on each Class Vehicle cannot be safely filled with more than nine to ten gallons, even when the fuel light indicates that the tank is not full. This is due to a fuel tank system defect. The shape of the tank causes the fuel pump to shut off before reaching a full 14.5 gallons.

2.      The defect severely diminishes the total driving distance of the Class Vehicles. Toyota advertises that the RAV4 can travel 580 miles on a single "full" tank and specifically tells customers in national advertising campaigns that they will need fewer trips to the gas pump. Toyota also advertises that the RAV4 travels an estimated 41 miles per gallon when driving in city conditions, 38 miles per gallon on the highway, and 40 miles per gallon combined. In reality, because the defect prevents drivers from safely filling the tank with more than ten gallons of fuel, drivers can only travel about 400 miles on a "full" tank, leaving consumers without the promised benefits of Toyota's best-selling hybrid. The smaller tank size also necessarily requires more stops and starts, affecting mileage and materially limiting driving range.

3.      Each Class Vehicle has been designed, manufactured, distributed, sold, and leased by Defendants, and each Class Vehicle's fuel tank system is defective. Toyota has known or should have known of this defect due to numerous complaints by consumers, pre-release testing, as well as feedback from dealerships. Toyota, however, does not inform purchasers

about the fuel tank system defect, and it continues to conceal material facts while its efforts to advertise, market, and sell the RAV4 in California and throughout the United States remain ongoing. Without the superior knowledge Toyota possesses about the defect, unsuspecting consumers continue to purchase the RAV4, expecting to be able to fill their vehicles with 14.5 gallons of fuel and to travel the mileage range Toyota advertises. Defendants' representations have induced Plaintiffs, and continue to induce Class members, to purchase and lease vehicles that do not perform as promised.

4.     To date, Toyota has not offered a repair or replacement option that cures the fuel tank system defect. Had Defendants disclosed the defective nature of the RAV4 to Plaintiffs, they would not have purchased it or would have paid substantially less for one.

5.     Plaintiffs therefore bring this action, individually, and on behalf of all similarly situated owners and lessees of 2019 and 2020 Toyota RAV4 Hybrids. Plaintiffs seek damages and injunctive relief for Defendants' violations of California consumer protection statutes and for fraudulent concealment.

## PARTIES

### A.     Plaintiffs

6.     Plaintiff Cole Coleman is a citizen and resident of Missouri. He purchased a new 2019 RAV4 Hybrid on September 2, 2019 from Bommarito Toyota in Hazelwood, Missouri, for approximately $31,889 (less a $900 rebate). Mr. Coleman purchased the RAV4 primarily for personal, family, or household use and has used the vehicle for regular everyday activities. Before purchasing his RAV4, Mr. Coleman saw Toyota's standard advertisements and marketing materials, including content on Toyota's website, in promotional brochures, and on vehicle Monroney stickers, about the RAV4's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's reported 14.5-gallon fuel tank capacity and estimated mileage of forty miles per gallon, Mr. Coleman believed that his RAV4 could travel over five hundred miles on one full tank of gas. Since purchasing the RAV4, however, he has never been able to fill the gas tank to the advertised 14.5-gallon capacity. At most, the tank will take about eight to ten

gallons, even when the fuel light indicates that the tank is not full. Anything more than that amount causes the tank to overflow. After repeated failed attempts to fill the gas tank to capacity, Mr. Coleman contacted a local Toyota dealership only to be told there is nothing they can do until Toyota releases a solution. The defective fuel tank remains installed on his RAV4, and Toyota has not offered a repair or replacement that eliminates the problems with the fuel tank system. As a result, Mr. Coleman must refuel more frequently than he would have to if the fuel tank system were defect-free, and the vehicle has never achieved the mileage range Toyota represented. At the time of purchase, Mr. Coleman was unaware of the defective nature of the RAV4's fuel tank system. Had Toyota disclosed the defect, Mr. Coleman would not have purchased a RAV4 or would have paid substantially less for it.

7.     Plaintiff Bruce Coletta is a citizen and resident of New Jersey. He purchased a new 2019 RAV4 Hybrid on October 3, 2019 from Dayton Toyota in Dayton, New Jersey, for $31,793.49. Mr. Coletta purchased the RAV4 primarily for personal, family, or household use and has used the vehicle for regular everyday activities. Before purchasing his RAV4, Mr. Coletta saw Toyota standard advertisements and marketing materials, including content on Toyota's website, in promotional brochures, and on vehicle Monroney stickers, about the RAV4's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's reported 14.5-gallon fuel tank capacity and estimated mileage of forty miles per gallon, Mr. Coletta believed that his RAV4 could travel over five hundred miles on one full tank of gas. Since purchasing the RAV4, however, he has never been able to fill the gas tank to the advertised 14.5-gallon capacity, even when the fuel light indicates that the tank is not full. The tank will take no more than ten gallons. Anything more than that amount causes the tank to overflow. After repeated failed attempts to fill the gas tank to capacity, Mr. Coletta visited a local Toyota dealership. The dealership installed a replacement tank, but the replacement tank has the same defect. Toyota has not offered a repair or replacement that eliminates the problems with the fuel tank system. As a result, Mr. Coletta must refuel more frequently than he would have to if the fuel tank system were defect-free, and the vehicle has never achieved the mileage range Toyota

1   represented. At the time of purchase, Mr. Coletta was unaware of the defective nature of the
2   RAV4's fuel tank system. Had Toyota disclosed the defect, Mr. Coletta would not have
3   purchased a RAV4 or would have paid substantially less for it.

4          8.     Plaintiff David DiOrio is a citizen and resident of Connecticut. He purchased a
5   new 2019 RAV4 Hybrid on July 31, 2019 from Girard Toyota in New London, Connecticut, for
6   approximately $39,000. Mr. DiOrio purchased the RAV4 primarily for personal, family, or
7   household use and has used the vehicle for regular everyday activities. Before purchasing his
8   RAV4, Mr. DiOrio saw Toyota standard advertisements and marketing materials, including
9   content on Toyota's website, in promotional brochures, and on vehicle Monroney stickers, about
10  the RAV4's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's
11  reported 14.5-gallon fuel tank capacity and estimated mileage of forty miles per gallon, Mr.
12  DiOrio believed that his RAV4 could travel over five hundred miles on one full tank of gas.
13  Since purchasing the RAV4, however, he has never been able to fill the gas tank to the advertised
14  14.5-gallon capacity, even when the fuel light indicates that the tank is not full. At most, the
15  tank will take seven to eight gallons. Anything more than that amount causes the tank to
16  overflow. Mr. DiOrio has experienced repeated failed attempts to fill the gas tank to capacity.
17  The defective fuel tank remains installed on his RAV4, and Toyota has not offered a repair or
18  replacement that eliminates the problems with the fuel tank system. As a result, Mr. DiOrio must
19  refuel more frequently than he would have to if the fuel tank system were defect-free, and the
20  vehicle has never achieved the mileage range Toyota represented. At the time of purchase, Mr.
21  DiOrio was unaware of the defective nature of the RAV4's fuel tank system. Had Toyota
22  disclosed the defect, Mr. DiOrio would not have purchased a RAV4 or would have paid
23  substantially less for it.

24         9.     Plaintiff Robert Jacobson-Duteil is a citizen and resident of Arizona. He
25  purchased a new 2020 RAV4 Hybrid on February 9, 2020 from Big Two Toyota in Chandler,
26  Arizona, for approximately $31,000. Mr. Jacobson-Duteil purchased the RAV4 primarily for
27  personal, family, or household use and has used the vehicle for regular everyday activities.
28

Before purchasing his RAV4, Mr. Jacobson-Duteil saw standard Toyota advertisements and marketing materials, including content on Toyota's website, in promotional brochures, and on vehicle Monroney stickers, about the RAV4's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's reported 14.5-gallon fuel tank capacity and estimated mileage of forty miles per gallon, Mr. Jacobson-Duteil believed that his RAV4 could travel over five hundred miles on one full tank of gas. Since purchasing the RAV4, however, he has never been able to fill the gas tank to the advertised 14.5-gallon capacity, even when the fuel light indicates that the tank is not full. At most, the tank will take ten to eleven gallons. Anything more than that amount causes the tank to overflow. After repeated failed attempts to fill the gas tank to capacity, Mr. Jacobson-Duteil visited a local Toyota dealership, but the dealership offered no solution. The defective fuel tank remains installed on his RAV4, and Toyota has not offered a repair or replacement that eliminates the problems with the fuel tank system. As a result, Mr. Jacobson-Duteil must refuel more frequently than he would have to if the fuel tank system were defect-free, and the vehicle has never achieved the mileage range Toyota represented. At the time of purchase, Mr. Jacobson-Duteil was unaware of the defective nature of the RAV4's fuel tank system. Had Toyota disclosed the defect, Mr. Jacobson-Duteil would not have purchased a RAV4 or would have paid substantially less for it.

10.     Plaintiff Brianna Lee is a citizen and resident of California. She purchased a new 2019 RAV4 Hybrid on May 3, 2019 in Dublin, California, for $35,524. She purchased the vehicle primarily for personal, family, or household use and has used the vehicle for regular everyday activities. Before purchasing her RAV4, Ms. Lee saw Toyota advertisements and marketing materials, including on Toyota's website, in brochures, and on vehicle Monroney stickers, about the vehicle's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's reported 14.5-gallon fuel tank capacity and estimated mileage of forty miles per gallon, Ms. Lee believed that the Toyota RAV4 could travel over five hundred miles on one full tank of gas. This was the primary reason why Ms. Lee purchased a RAV4, as she drives 100 miles every day for work. Since purchasing her RAV4, Ms. Lee has never been able to fill the

gas tank to the advertised 14.5-gallon capacity, even when the fuel light indicates that the tank is not full. At most, the fuel tank will take nine gallons. Anything more than that amount causes the tank to overflow. After repeated failed attempts to fill the gas tank to capacity, Ms. Lee visited a local Toyota dealership, but the dealership offered no solution. The defective fuel tank remains installed on her RAV4, and Toyota has not offered a repair or replacement that eliminates the problems with the fuel tank system. As a result, Ms. Lee must refuel more frequently than she would have to if the fuel tank system were defect-free, and the vehicle has never achieved the total driving distance Toyota represented. At the time of purchase, Ms. Lee was unaware of the defective nature of the RAV4's fuel tank system. Had Toyota disclosed the defect, Ms. Lee would not have purchased a RAV4 or would have paid substantially less for it.

11.    Plaintiff Cristin Trosien is a citizen and resident of Michigan. She purchased a new 2020 RAV 4 Hybrid on January 30, 2020 from Suburban Toyota in Farmington Hills, Michigan, for approximately $40,000. She purchased the vehicle primarily for personal, family, or household use and has used the vehicle for regular everyday activities. Before purchasing her RAV4, Ms. Trosien saw Toyota standard advertisements and marketing materials, including content on Toyota's website, in promotional brochures, and on vehicle Monroney stickers, about the vehicle's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's reported 14.5-gallon fuel tank capacity and estimated mileage of forty miles per gallon, Ms. Trosien believed that the Toyota RAV4 could travel over five hundred miles on one full tank of gas. Since purchasing her RAV4, however, Ms. Trosien has never been able to fill the gas tank to the advertised 14.5 gallon capacity, even when the fuel light indicates that the tank is not full. At most, the fuel tank will take about nine to ten gallons. Anything more than that amount causes the tank to overflow. Ms. Trosien has experienced repeated failed attempts to fill the gas tank to capacity. The defective fuel tank remains installed on her RAV4, and Toyota has not offered a repair or replacement that eliminates the problems with the fuel tank system. As a result, Ms. Trosien must refuel more frequently than she would have to if the fuel tank system were defect-free, and the vehicle has never achieved the total driving distance Toyota represented. At the

time of purchase, Ms. Trosien was unaware of the defective nature of the RAV4's fuel tank system. Had Toyota disclosed the defect, Ms. Trosien would not have purchased a RAV4 or would have paid substantially less for it.

12.     Plaintiff Michele Williams is a citizen and resident of Florida. She purchased a new 2019 RAV4 Hybrid on October 10, 2019 from Miracle Toyota in Haines City, Florida, for $37,890. Ms. Williams purchased the RAV4 primarily for personal, family, or household use and has used the vehicle for regular everyday activities. Before purchasing her RAV4, Ms. Williams say Toyota standard advertisements and marketing materials, including content on Toyota's website, in promotional brochures, and on vehicle Monroney stickers, about the RAV4's fuel tank capacity, fuel economy, and total driving distance. Based on Toyota's reported 14.5-gallon capacity and estimated mileage of forty miles per gallon, Ms. Williams believed that the Toyota RAV4 could travel over five hundred miles on one full tank of gas. Since purchasing the RAV4, however, Ms. Williams has never been able to fill the gas tank to the advertised 14.5-gallon capacity, even when the fuel light indicates that the tank is not full. At most, the tank will take nine to ten gallons. Anything more than that amount causes the tank to overflow. After repeated failed attempts to fill the gas tank to capacity, Ms. Williams visited a local Toyota dealership, but the dealership offered no solution. The defective fuel tank remains installed on Ms. Williams' RAV4, and Toyota has not offered a repair or replacement that eliminates the problems with the fuel tank system. As a result, Ms. Williams must refuel more frequently then she would have to if the fuel tank system were defect-free, and her RAV4 has never achieved the mileage range Toyota represented. At the time of purchase, Ms. Williams was unaware of the defective nature of the RAV4's fuel tank system. Had Toyota disclosed the defect, Ms. Williams would not have purchased a RAV4 or would have paid substantially less for it.

## B.    Defendants

13.     Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. are Texas corporations and maintain their principal place of business in that state. At all times relevant herein, Defendants engaged in the business of designing, manufacturing,

marketing, warranting, distributing, selling, and leasing automobiles, including the Class Vehicles, in California and throughout the United States.

## JURISDICTION AND VENUE

14.  This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which there are at least 100 Class members, the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs, and Plaintiffs and Defendants are domiciled in different states.

15.  This Court has personal jurisdiction over Defendants because they regularly conduct business throughout California, including within this judicial District, and have sufficient minimum contacts in the state to render the exercise of jurisdiction by this Court proper and necessary.

16.  Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, and Defendants caused harm to Class members residing within this judicial District.

## INTRADISTRICT ASSIGNMENT

17.  Pursuant to Civil Local Rule 3-2(d), this action may be assigned to the San Francisco or the Oakland Division, as the events giving rise to the causes of action alleged herein occurred in Alameda County.

## COMMON FACTUAL ALLEGATIONS

A.  **Toyota's Hybrid Vehicles**

18.  Toyota launched the RAV4 model in 1995 and introduced the first RAV4 Hybrid in 2016.[1] The RAV4 Hybrid's gas engine works in combination with an electric motor for increased fuel economy. As described by Toyota:

> The Hybrid Synergy Drive System utilizes a computer-controlled gasoline engine and electric motor to provide the most efficient combination of power for the vehicle. To conserve energy, when the brakes are applied the braking force

---

[1] *See* https://www.trucks.com/2019/03/08/5-things-to-know-about-toyotas-2019-rav4-hybrid/ (last visited Mar. 6, 2020).

generates electricity which is then sent to the traction battery. In addition, the engine shuts off when the vehicle is stopped. The benefits are better fuel economy and reduced vehicle emissions.[2]

19.     Hybrids' fuel efficiency attracts consumers interested in saving in fuel costs or reducing the environmental impact of fully gas-powered engines.

20.     Toyota has successfully appealed to this group of consumers with a number of "Alternative Fuel Vehicles," including 2020 RAV4 Hybrid, which Toyota touts "as the most powerful yet fuel-efficient RAV4 in the lineup."[3]

21.     Other vehicles in Toyota's "green" fleet include the Camry Hybrid, Avalon Hybrid, and Corolla Hybrid, and Prius.[4]

22.     Toyota identifies environmental responsibility as a priority. It developed the Alternative Fuel Vehicle line to "make the best possible use of our natural resources."[5] Toyota promises its customers that it "focus[es] on environmentally sustainable solutions in everything [it] do[es] and every vehicle [it] make[s]."[6] The company strategically positions its products as "world-changing vehicles" to entice buyers, in California and throughout the country, who wish to be environmentally-conscious or who seek to reduce fuel costs:[7]

**Cars drivers love—for a planet we all do**

How do you balance a passion for performance with a love for the planet? It's a question our engineers answer every day. We're creating vehicles that are safe, practical and fun to drive – while at the same time working to ensure our cars and trucks are at the forefront of environmental engineering. Today, with more than 2 million Toyota hybrid vehicles on U.S. roads – more than any other manufacturer – and new breakthroughs in plug-in, electric, and hydrogen fuel cell technologies, we're building better cars for the road and for the Earth.

[2] *See* https://www.toyota.com/t3Portal/document/om-s/OM20V4QRG/pdf/OM20V4QRG.pdf (last visited Mar. 6, 2020).
[3] *See* https://www.toyota.com/alternative-fuel/ (last visited Mar. 6, 2020).
[4] *See id.*
[5] *See* https://www.toyota.com/usa/our-story#!/toyota-way (last visited Mar. 6, 2020).
[6] *See* https://www.toyota.com/usa/environment/index.html (last visited Mar. 6, 2020).
[7] *See id.*

23.     Some consumers, like Plaintiffs and Class members, are willing to pay more for a hybrid vehicle that offers better gas mileage and is easier on the environment than its gas-only counterpart. Toyota capitalizes on this consumer preference in its nation-wide advertising and marketing campaigns:[8]



**Fueling**
Hybrids have a fuel tank just like every other vehicle. The only difference is the number of times you need to visit the pump.

## B.    The RAV4 Hybrid

24.     Of Toyota's Alternative Fuel Vehicles, the RAV4 is Toyota's best-seller.[9] Toyota has sold hundreds of thousands of 2019 and 2020 RAV4 Hybrids. The base price for this model ranges from $27,850 to $36,880 depending on the style of the vehicle (e.g., LE, XLE, XSE, Limited).[10]

25.     According to Toyota's nationally-distributed standard advertising and marketing materials, including its website, informational brochures, and Monroney stickers, each 2019 and 2020 RAV4 Hybrid is equipped with a 14.5-gallon fuel tank.[11]

---

[8] *See* https://www.toyota.com/alternative-fuel/ (last visited Mar. 6, 2020).
[9] *See* https://www.thetruthaboutcars.com/2019/12/the-toyota-rav4-hybrid-is-now-by-far-toyotas-best-selling-hybrid-in-america-easily-outselling-the-prius-in-2019/ (last visited Mar. 6, 2020).
[10] *See* https://www.toyota.com/rav4hybrid/2019/; https://www.toyota.com/rav4hybrid/ (last visited Mar. 6, 2020).
[11] *See* https://www.toyota.com/rav4/features/mechanical_performance/4444/4456/4454/F426; https://monroneylabels.com/cars/1140109-2019-toyota-rav4-hybrid?hide_frame=false&ref=https%3A%2F%2Fwww.dallastruckworld.com%2Fused-inventory%2Findex.htm%3Fstart%3D16%26&v=dallastruckworld (last visited Mar. 6, 2020).

Year:  2019
Make:  Toyota
Model:  RAV4 Hybrid XSE
VIN:  JTMEWRFV1KD515242

Engine:  4 Cylinder Engine
Transmission:  CVT
Exterior:  Blizzard Pearl/midni
Interior:  Black

## MECHANICAL

- Axle Ratio: TBD
- GVWR: 4,920 lbs
- Electronic Transfer Case
- Automatic Full-Time All-Wheel Drive
- 550CCA Maintenance-Free Battery w/Run Down Protection
- Hybrid Electric Motor
- Towing Equipment -inc: Trailer Sway Control
- 1165# Maximum Payload
- Gas-Pressurized Shock Absorbers
- Front And Rear Anti-Roll Bars
- Sport Tuned Suspension
- Electric Power-Assist Speed-Sensing Steering
- 14.5 Gal. Fuel Tank
- Quad-Dual Stainless Steel Exhaust w/Chrome Tailpipe Finisher
- Permanent Locking Hubs
- Strut Front Suspension w/Coil Springs
- Double Wishbone Rear Suspension w/Coil Springs
- Regenerative 4-Wheel Disc Brakes w/4-Wheel ABS, Front Vented Discs, Brake Assist, Hill Hold Control and Electric Parking Brake
- Mechanical Limited Slip Differential
- Nickel Metal Hydride Traction Battery

## EXTERIOR

- Wheels: 18" x 7.0J Black Painted Aluminum Alloy
- Tires: 225/60R18 AS
- Aluminum Spare Wheel
- Compact Spare Tire Mounted Inside Under Cargo
- Clearcoat Paint
- Body-Colored Front Bumper w/Black Rub Strip/Fascia Accent and Metal-Look Bumper Insert
- Black Rear Bumper w/Metal-Look Rub Strip/Fascia Accent
- Black Bodyside Cladding and Black Wheel Well Trim
- Chrome Side Windows Trim and Black Front Windshield Trim
- Body-Colored Door Handles
- Black Power Heated Side Mirrors w/Manual Folding and Turn Signal Indicator
- Fixed Rear Window w/Fixed Interval Wiper and Defroster
- Deep Tinted Glass
- Fully Galvanized Steel Panels
- Lip Spoiler
- Black Grille w/Body-Color Surround
- Roof Rack Rails Only
- LED Brakelights
- Fully Automatic Projector Beam Led Low/High Beam Daytime Running Auto High-Beam Headlamps
- Laminated Glass

## ENTERTAINMENT

- Radio w/Seek-Scan, Clock, Speed Compensated Volume Control, Steering Wheel Controls, Voice Activation and Radio Data System
- Integrated Roof Antenna
- 3 LCD Monitors In The Front

## INTERIOR

- Heated Front Seats -inc: 8-way power driver w/lumbar and 4-way adjustable passenger seats
- Driver Seat
- Passenger Seat
- 60-40 Folding Split-Bench Front Facing Manual Reclining Fold Forward Seatback Rear Seat
- Manual Tilt/Telescoping Steering Column
- Wi-Fi Connect Mobile Hotspot Internet Access
- Front Cupholder
- Rear Cupholder
- Cruise Control w/Steering Wheel Controls
- Distance Pacing
- HVAC -inc: Underseat Ducts
- Dual Zone Front Automatic Air Conditioning
- Glove Box
- Driver Foot Rest
- Full Cloth Headliner
- Leatherette Door Trim Insert
- Leather/Aluminum Gear Shift Knob
- Interior Trim -inc: Metal-Look Instrument Panel Insert and Metal-Look Interior Accents
- Day-Night Rearview Mirror
- Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination, Driver And Passenger Auxiliary Mirror
- Full Floor Console w/Covered Storage, Mini Overhead Console w/Storage and 2 12V DC Power Outlets
- Front Map Lights
- Fade-To-Off Interior Lighting
- Full Carpet Floor Covering
- Carpet Floor Trim
- Cargo Area Concealed Storage
- Roll-Up Cargo Cover
- Trunk/Hatch Auto-Latch
- Cargo Space Lights
- Entune Safety Connect Tracker System
- Instrument Panel Bin, Driver And Passenger Door Bins
- Delayed Accessory Power
- Outside Temp Gauge
- Redundant Digital Speedometer
- Digital/Analog Display
- Manual Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints
- Front Center Armrest and Rear Center Armrest
- 2 Seatback Storage Pockets
- Seats w/Leatherette Back Material
- Perimeter Alarm
- 2 12V DC Power Outlets
- Air Filtration

## SAFETY

- Side Impact Beams
- Dual Stage Driver And Passenger Seat-Mounted Side Airbags
- Blind Spot Monitor Blind Spot Sensor
- Pre-Collision System and Rear Cross-Traffic Alert
- Low Tire Pressure Warning
- Dual Stage Driver And Passenger Front Airbags
- Curtain 1st And 2nd Row Airbags
- Airbag Occupancy Sensor
- Driver Knee Airbag and Passenger Cushion Front Airbag
- Rear Child Safety Locks
- Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners
- Back-Up Camera
- Front Camera
- Left Side Camera
- Right Side Camera

### CITY MPG
**41**

### HIGHWAY MPG
**38**

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## *New*

| MSRP | $33,850.00 |
| --- | --- |
| **INSTALLED OPTIONS** | |
| [FE0] 50 State Emissions | $0 |
| [SZ] Xse Package | $0 |
| [AT] Xse Advanced Technology Package | $640 |
| [CY] Xse Weather Package | $375 |
| [PC] Special Color | $395 |
| [SR] Panoramic Sunroof | $200 |
| [EN0] Radio: Entune 3.0 Premium JBL Audio W/Navigation | $1,620 |
| Original Shipping Charge | $1,120 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$38,200.00** |

### Get more information on your smartphone:

## Southwest Kia

southwestkia.com
888-272-1978

MonroneyLabels.com

CLASS ACTION COMPLAINT

26.     The RAV4's fuel economy is also a focal point of Toyota's national marketing and advertising strategy:[12]



27.     With an estimated 41 miles per gallon in city driving, 38 miles per gallon on the highway, and 40 miles per gallon overall, Toyota represents that its RAV4 can travel 580 miles on one "full" tank of gas (or 100 miles for every 2.5 gallons as stated under the estimated mpg numbers pictured below). This is a key selling point for Toyota, and a primary reason why Plaintiffs and Class members purchase the RAV4.

[12] *See* https://www.toyota.com/content/ebrochure/2019/rav4_ebrochure.pdf (last visited Mar. 6, 2020).

1

2      28.     Knowing that fuel economy is a primary reason why a consumer may purchase

3  a hybrid vehicle, Toyota not only emphasizes the fuel economy and mileage range of its vehicles

4  in its marketing and advertising campaigns, but also in the design of the vehicle itself. Each

5  Class Vehicle's interior Multi-Informational Display shows drivers various metrics for gauging

6  performance and maximizing fuel efficiency, including "Distance to Empty" and "Total

7  Average Fuel Economy."[13]

8

9   

10

11

12     29.     Toyota also offers RAV4 drivers "ECO drive mode." The RAV4's Quick

13 Reference Guide instructs owners to use this function "to help achieve low fuel consumption

14 during trips that involve frequent accelerating."[14]

15 **C.      The 2019 Fuel Tank Redesign**

16     30.     In 2019, Toyota undertook a complete redesign of the RAV4 Hybrid, including

17 the fuel tank.[15] Toyota eliminated the "Native America papoose shape" fuel tank installed in

18 earlier RAV4 models, pictured below:[16]

19

20

21

---

22 [13] *See* https://www.toyota.com/t3Portal/document/om-s/OM0R025U/pdf/OM0R025U.pdf (last
   visited Mar. 6, 2020).
23
24 [14] *See* https://www.toyota.com/t3Portal/document/om-s/OM20V4QRG/pdf/OM20V4QRG.pdf
   (last visited Mar. 6, 2020)
   [15] *See* https://www.trucks.com/2019/03/08/5-things-to-know-about-toyotas-2019-rav4-hybrid/;
25 https://www.autoblog.com/2019/12/23/2019-toyota-rav4-hybrid-fuel-gas-tank-shape-
   problem/(last visited Mar. 6, 2020).
26 [16] *See* https://toyotaparts.bochtoyotasouth.com/oem-parts/toyota-fuel-tank-
   7700142280?origin=pla&gclid=EAIaIQobChMInZrOqa6G6AIVDMpkCh0gBQ6MEAQYAi
27 ABEgJdZfD_BwE (last visited Mar. 6, 2020).

28

1



2

3

4

5

31.     Instead, the 2019 and 2020 RAV4 Hybrid feature a new "latitudinal, saddle-
shaped design," which appears to have been designed, unlike its predecessor, to fit over some
other vehicle component.[17]



32.     This saddle-shaped design, however, cannot be safely filled with 14.5 gallons—
the number Toyota advertises as the capacity of the fuel tank. Consumers can only fill the tank
with nine to eleven gallons before the tank overflows, even when the fuel light indicates that
the tank is not full.

**D.     Consumer Reports of RAV4 Fuel Tank System Issues**

33.     Since Toyota's redesign of the RAV4 fuel tank, consumers located across the
country have filed complaints with the National Highway Traffic Safety Administration
("NHTSA"), reporting similar stories of being unable to safely fill the gas tanks on their
vehicles.[18]

---

[17] *See* https://parts.longotoyota.com/oem-parts/toyota-fuel-tank-
770010r100?origin=pla&gclid=EAIaIQobChMIiYvsmqaC6AIVjeNkCh1DxAoLEAQYASAB
EgKpI_D_BwE (last visited Mar. 6, 2020).
[18] *See* https://www.nhtsa.gov/vehicle/2019/TOYOTA/RAV4%252520HYBRID#complaints
(last visited Mar. 6, 2020).

34.     One consumer from Kentucky complained:[19]

I'VE ONLY FILLED THE TANK 4 TIMES SO FAR BUT I CAN NEVER
GET IT FULL. THE MOST IT WILL TAKE IS ABOUT 10 GALLONS
AND THAT IS ONLY IF I STAND THERE AND FORCE FEED IT MORE
GAS VERY SLOWLY WHILE PULLING THE NOZZLE OUT A LITTLE
AT A TIME. I HAVE TO FILL IT WAY TOO FREQUENTLY, AND IN
THE WINTER IT IS ESPECIALLY INCONVENIENT.

35.     A RAV4 owner from Livermore, California reported:[20]

WHEN FILLING UP, THE GAS CUTS OFF VERY EARLY; THE GAS
GAUGE WILL ONLY READ 3/4 TO 7/8 FULL. THIS LEADS TO
"TOPPING OFF" WHICH IS AN ENVIRONMENTAL AND SAFETY
ISSUE.

36.     A Toyota customer from Illinois had the same experience:[21]

FUEL TANK DOES NOT FILL UP TO FULL. RANGE ADVERTISED AS
WELL OVER 500 MILES BUT USUAL RANGE AFTER FILL UP IN
400S.

37.     Complaints available on consumer online forums are similar. One person reported:[22]

I just had my first fill-up on a new 2019 XSE Hybrid. I was able to get it full according to the gauge but the tank only took 9.5 gallons. Made in Japan 4/2019 model.

38.     Another consumer shared:[23]

We are having the same problem, with the light on and 20 miles left to go ( according to the monitor) I can only put 8 1/2 gallons.

[19] *See id.*
[20] *See id.*
[21] *See id.*
[22] *See* https://www.toyotanation.com/threads/cant-seem-get-a-full-tank-of-gas.1654530/ (last visited Mar. 6, 2020).
[23] *See id.*

39.     As these consumer complaints illustrate, Toyota has not delivered a RAV4 Hybrid with the 14.5-gallon fuel tank it advertised, and the vehicle cannot travel the 580-mile driving distance its drivers reasonably expected based on the representations Toyota made.

**E.     Toyota's Knowledge of the Defect**

40.     Whether from industry standard pre-release testing, post-release feedback from consumers and dealerships, warranty data, or complaint analysis, Toyota knew or should have known that the saddle-shaped fuel tank system installed on its 2019 and 2020 RAV4 Hybrids is defective.

41.     In fact, in November 2019, Toyota published a "Tech Tip," referring to what the company termed a "Fuel Gauge Concern." [24] Toyota acknowledged that "[s]ome 2019 model year RAV4 H[ybrid] customers may be experiencing some concern related to fuel gauge[s] reading less than full."[25] Consistent with the customer complaints reported online and to the NHTSA, the Tech Tip alerted vehicle technicians that "The meter may display somewhere around 3/4 to 7/8 full at the time of gas station auto stop."[26] Toyota recommended "no repairs" at the time, stating that the "[c]oncern is under investigation," and instructing technicians to "contact TAS for further assistance."[27]

42.     As of December 22, 2019, Toyota is no closer to curing the defect affecting the Plaintiffs and Class members who have collectively purchased hundreds of thousands of these vehicles. Toyota is simply telling customers they "should refuel before or when the low fuel light illuminates, to prevent running out of fuel."[28]

43.     Toyota has, however, admitted that the fuel tank system is flawed. In a trade publication, Toyota is quoted as having confirmed that it is "investigating a fuel tank shape issue

---

[24] *See* https://static.nhtsa.gov/odi/tsbs/2019/MC-10169408-9999.pdf (last visited Mar. 6, 2020).

[25] *See id.*

[26] *See id.*

[27] *See id.*

[28] *See* https://www.autoblog.com/2019/12/23/2019-toyota-rav4-hybrid-fuel-gas-tank-shape-problem/ (last visited Mar. 6, 2020).

on certain RAV4 Hybrid vehicles . . . [that] may prevent a full refill by up to several gallons [and . . .] may impact the vehicle's total available driving distance."[29]

44.     As the consumer complaints quoted above show, the fuel tank system defect is a safety and environmental hazard. Despite the potential for the unreasonable harm that may be caused by the defect, Toyota continues to conceal material facts about it, even though it has superior knowledge of the problem. Its sustained misrepresentations and omissions continue to induce consumers to purchase vehicles that Toyota knows are not in the condition or equipped with the features that are advertised. As a result, relying on Toyota's partial representations, consumers continue to purchase vehicles that they would not have, or would have paid less for, had Toyota disclosed the fuel tank system defect.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals. Pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek to certify a class (the "Nationwide Class") of:

> All persons and entities in the United States who purchased (other than for resale) or leased a model year 2019 through 2020 Toyota RAV4 Hybrid.

In the alternative, Plaintiffs seek certification of the following California Class:

> California Class:  All persons and entities in the state of California who purchased (other than for resale) or leased a model year 2019 through 2020 Toyota RAV4 Hybrid.

46.     Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47.     Numerosity. Toyota sold at least hundreds of thousands of 2019 and 2020 RAV4 Hybrid vehicles. Members of the Class are located throughout the United States and are so

---

[29] *See id.*

numerous that joinder is practicable. The precise number of Class members can be determined through discovery, including discovery of Defendants' business records.

48.     <u>Common Questions of Law and Fact Predominate</u>. There are questions of law and fact common to Plaintiffs and Class members, and those questions predominate over any questions that may affect any individual Class member. Such common questions of law and fact include, but are not limited to:

a.      Whether the Toyota RAV4 Hybrid was defective at the time of sale;

b.      Whether the defective fuel tank system substantially impairs the value of the RAV4 Hybrid;

c.      Whether Toyota knew about the defect, but continued to advertise, market, and sell the RAV4 Hybrid to consumers without disclosing the defective nature of the vehicle's fuel tank system to consumers;

d.      Whether a reasonable consumer would consider the defective nature of the fuel tank system and the consequences of the defect important to the decision to purchase a RAV4 Hybrid;

e.      Whether Toyota breached implied warranties associated with the RAV4 Hybrid;

f.      Whether Toyota's affirmative representations and omissions regarding the fuel tank system installed on its RAV4 Hybrid vehicles (and their defects) were likely to deceive a reasonable consumer;

g.      Whether Toyota's conduct violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.;

h.      Whether Plaintiffs and members of the Class overpaid for their RAV4 Hybrid vehicles;

i.      Whether Plaintiffs and Class members are entitled to equitable relief, including restitution and injunctive relief; and

j.      Whether Plaintiffs and Class members are entitled to damages or other monetary relief, and if so, in what amount.

49.     <u>Typicality</u>. Plaintiffs' claims are typical of the claims of all members of the Class. Their claims arise from the same practices and conduct that give rise to the claims of all Class members and are based on the same legal theories. Plaintiffs, like all Class members, purchased Toyota RAV4 vehicles that contain a defective fuel tank system. Plaintiffs and the members of the Class would not have purchased, or would have paid substantially less for, their RAV4 vehicles had they known of the defect or the fact that Toyota would not adequately respond when the defect manifested.

50.     <u>Adequacy</u>. Plaintiffs will fairly and adequately protect the interests of the Class. They have no interests antagonistic to those of the other Class members and are committed to vigorously prosecuting this case. Plaintiffs have retained counsel experienced in consumer class actions and complex litigation involving defective automobiles.

51.     <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given that the relative amount of each Class member's is small relative to the expense of litigating those claims, and given Defendants' financial resources, no Class member is likely to seek legal redress on an individual basis for the violations alleged in this complaint. Individual actions would significantly increase the expense to all parties, burden the court with duplicative litigation, and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. Separate actions by individual Class members would also risk adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. A class action, however, promotes an orderly and expeditious adjudication of the Class claims, presents fewer management difficulties, and ensures comprehensive supervision in a single forum.

52.     Defendants acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

53.     All members of the Class are ascertainable by reference to objective criteria. Defendants have, or have access to, address information for Class members which may be used for the purpose of providing notice of the pendency of this class action.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
### Cal. Civ. Code § 1750, *et seq.*, ("CLRA")

54.     Plaintiff Lee brings this claim on behalf of herself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

55.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

56.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

57.     Each Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

58.     Plaintiffs and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

59.     Defendants provide "goods" or "services" within the meaning of Cal. Civ. Code §§ 1761(a), 1761(b) and 1770. The sale or lease of the Toyota RAV4 constitutes sale or lease of such goods or services.

60.     Plaintiffs and Class members engaged in "transactions" under Cal. Civ. Code § 1761(e), including the purchase and lease of Defendants' vehicles.

61.     Toyota made misleading representations or omissions concerning the characteristics of the RAV4, including the vehicle's fuel tank capacity and total driving distance.

62.     Plaintiffs and Class members were deceived into purchasing or leasing the vehicle by Toyota's failure to disclose knowledge of the defect.

63.     The facts, which Defendants misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiffs' and Class members' decisions about whether to purchase the RAV4.

64.     In violation of Cal. Civ. Code § 1770(a)(5), Defendants represented that the RAV4 had characteristics, uses, and benefits that it does not have.

65.     Additionally, by the conduct described in this complaint, Defendants have violated Cal. Civ. Code § 1770(a)(7), (9), and (16) by representing that the RAV4 is of a standard, quality, or grade that it is not; by advertising the RAV4 with intent not to sell the laptop as advertised; by representing that the vehicle was supplied in accordance with a previous representation when it was not.

66.     Defendants had a duty to disclose the omitted facts because it had exclusive knowledge of material facts not known to Plaintiffs and Class members (that the fuel tank system was defective), because they actively concealed material facts, and because they did not provide Plaintiffs and Class members proper notice of the defect, and because they otherwise suppressed true material facts.

67.     Plaintiffs and members of the Class have suffered harm as a result of these violations of the CLRA because they have paid money to Defendants that they otherwise would not have paid.

68.     Under Cal. Civ. Code § 1780, Plaintiffs and Class members seek appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation.

69.     Pursuant to Cal. Civ. Code § 1782, Plaintiffs mailed Defendants a CLRA demand letter via certified mail. If Defendants fail to provide the relief demanded within the time allowed by law, Plaintiffs will amend their complaint to seek actual and punitive damages for violation of the CLRA.

70.    Attached hereto is the venue declaration required by CLRA, Cal. Civ. Code § 1780(d).[30]

**COUNT II**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**
**Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL")**

71.    Plaintiff Lee brings this claim on behalf of herself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

72.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

73.    California Bus. & Prof. Code § 17200, *et seq.*, prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

74.    Defendants have engaged in a pattern and practice of acts of unfair competition in violation of California's UCL, including the practices alleged herein.

*75.*    By violating the Plaintiffs' and other Class members' rights, and engaging in the activity recited above, Defendants have committed and continue to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in Bus. & Prof. Code § 17200, *et seq.*

76.    Cal. Bus. & Prof. Code § 17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and Cal. Bus. & Prof. Code § 17203 provides that a court may grant injunctive and equitable relief to such persons.

77.    The unlawful conduct of Defendants alleged herein, are acts of unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*, for which Defendants are liable and for which the court should issue equitable and injunctive relief, including restitution, pursuant to Cal. Bus. & Prof. Code § 17203.

---

[30] A declaration may be used in lieu of an affidavit. Cal. Civ. Code § 2015.5.

78.     Through their conduct, Defendants have engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendants' use of such unfair business practices constitutes unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

79.     Defendants' conduct as alleged herein is unlawful, unfair, and fraudulent.

80.     Defendants' conduct as alleged herein is "unlawful" in that, among other things, it violates the California Consumer Legal Remedies Act, the Song-Berly Warranty Act, and constitutes fraudulent concealment.

81.     Defendants' conduct as alleged herein is also "unfair." Defendants' policy of misrepresenting that their products are not defective and inducing individuals to buy their products by providing these misrepresentations, constitutes an unfair business act or practice within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*, in that the justification for Defendants' conduct is outweighed by the gravity of the consequences to the general public. There were reasonable available alternatives for Defendants to further their business interests other than misleading the public. Indeed, the burden and expense of disclosing accurate information about the RAV4's fuel tank system would be minimal while the negative impact on the general public in the aggregate is significant. Such conduct is also contrary to public policy, immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

82.     Further, Defendants' conduct constitutes "unfair" business acts and practices because Defendants' practices are "likely to cause substantial injury" to Plaintiffs and members of the general public, which are not "reasonably avoidable" by Plaintiffs and members of the general public and the injury is "not outweighed" by the practice's benefits to Plaintiffs and members of the general public. Such conduct is ongoing and continues to this date.

83.     Plaintiffs and members of the general public relied upon Defendants' unfair business acts and practices—the material representations, omissions, and non-disclosures—to their detriment.

84.     Plaintiffs and members of the general public have suffered injury in fact and have lost money as a result of Defendants' unfair business acts and practices.

85.     Defendants' scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead.

86.     As more fully described above, Defendants knowingly and intentionally concealed from Plaintiffs and Class members that the Toyota RAV4 has a defective fuel tank system that reduces a vehicle's total driving distance.

87.     Defendants knew, recklessly disregarded, or should have known that their representations, omissions, and non-disclosures were false, misleading, untrue, deceptive, or likely to deceive or mislead the public.

88.     Plaintiffs and members of the Class relied upon Defendants' material representations, omissions, and non-disclosures to their detriment.

89.     Plaintiffs and members of the Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent business acts and practices. This injury was directly and substantially caused by Defendants' intentional acts, as alleged above.

90.     Defendants have continued to take steps to perpetuate these deceitful practices against Plaintiffs, Class members, and the general public. Unless enjoined, Defendants will continue to harm Plaintiffs, Class members, and the general public.

91.     As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and Class members. Defendants should be made to disgorge its ill-gotten gains and restore such monies to Plaintiffs and Class members. Defendants' unfair business practices furthermore entitle Plaintiffs and Class members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendants cease its complained-of practices and account for, disgorge, and restore to Plaintiffs and Class members the compensation unlawfully obtained from them.

1
2
3

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY,**
**VIOLATION OF THE SONG-BEVERLY ACT,**
**Cal. Civ. Code § 1790, *et seq.***

4       92.     Plaintiff Lee brings this claim on behalf of herself and the members of the Class,
5   or alternatively, the California Class, under the laws of that state, against Defendants.

6       93.     Plaintiffs re-allege and incorporate by reference the allegations contained in the
7   paragraphs above as if fully set forth herein.

8       94.     Plaintiff Lee purchased a Toyota RAV4 equipped with a defective fuel tank
9   system. At the time of purchase, Defendants were in the business of manufacturing and selling
10  these goods.

11      95.     By placing their vehicles in the stream of commerce, Defendants impliedly
12  warranted their vehicles were reasonably fit for their intended use.

13      96.     Defendants' vehicles are not merchantable. The vehicles are unfit for the ordinary
14  purposes for which such goods are used and were not of the same quality of those generally
15  acceptable in the trade. In breach of the implied warranty of merchantability, the RAV4's fuel
16  tank cannot hold the advertised amount of fuel—14.5 gallons, severely reducing the total
17  distance a driver is able to travel, well below the 580-mile driving range Toyota that represents.

18      97.     Defendants' vehicles were not reasonably fit for their intended use when
19  Defendants put the RAV4 on the market.

20      98.     The defects in the vehicles were not open or obvious to consumers.

21      99.     Any purported limitation of the duration and scope of the implied warranty of
22  merchantability given by Defendants is unreasonable, unconscionable and void, because
23  Defendants knew or recklessly disregarded the defect in the fuel tank system, which could not
24  be discovered, if at all, until the vehicles were used for a period of time longer than the period
25  of any written warranty, and Defendants willfully withheld information about the defects from
26  purchasers of the vehicles.

27
28

100.   Moreover, due to the unequal bargaining power between the parties, Plaintiffs and Class members had no meaningful alternative to accepting Defendants' attempted pro forma limitation of the duration of any warranties.

101.   As a direct and proximate result, Plaintiffs and Class members have been damaged in that, inter alia, they would not have purchased or would have paid substantially less for Defendants' vehicles.

102.   Defendants' breach of the implied warranty was a substantial factor in causing Plaintiffs' and Class members' harm.

**COUNT IV**
**FRAUDULENT CONCEALMENT**

103.   Plaintiffs bring this claim against Defendants on behalf of themselves and the members of the Nationwide Class under the common law of fraudulent concealment. In the alternative, Plaintiffs bring this claim against Defendants under the laws of the state where Plaintiffs and Class members purchased the Class Vehicles.

104.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

105.   Defendants intentionally concealed that the Toyota RAV4 is defective and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Class Vehicles they were selling had no significant defects, that the fuel tank had a capacity of 14.5 gallons, and that RAV4 drivers could travel 580 miles on a single "full" tank. Defendants knew about the defect in the fuel tank system when making such representations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and each Class member, pray for judgment against Defendants as follows:

1    A.      That this action and the proposed class be certified and maintained as a class

2 action, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law

3 firms representing Plaintiffs as counsel for the Class;

4    B.      For actual damages, restitution, and all other appropriate legal and equitable and

5 injunctive relief;

6    C.      For declaratory relief;

7    D.      For pre-judgment and post-judgment interest;

8    E.      For civil penalties, as requested herein;

9    F.      For punitive and exemplary damages, as requested herein;

10    G.      For attorneys' fees and costs as permitted by law;

11    H.      For appropriate injunctive relief; and

12    I.      For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

14 Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on

15 all causes of action so triable.

Dated: March 6, 2020

**BLEICHMAR FONTI & AULD LLP**

By:    /s/ *Lesley E. Weaver*

Lesley E. Weaver (SBN 191305)
Angelica M. Ornelas (SBN 285929)
Joshua S. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

**KEHOE LAW FIRM, P.C.**
Michael K. Yarnoff (*pro hac vice forthcoming*)
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102

27

Telephone: (215) 792-6676
Facsimile: (212) 804-7700
myarnoff@kehoelawfirm.com

CLASS ACTION COMPLAINT

1

2          **DECLARATION OF LESLEY E. WEAVER FOR CLRA COUNT**

3          I, Lesley E. Weaver, declare and state as follows:

4          1.      I am over the age of 18 years and counsel for Plaintiffs in this action. I submit

5  this declaration as required by California Civil Code § 1780(d).

6          2.      Venue is proper in this judicial District because Defendants are doing business

7  in the counties comprising the Northern District of California. Further, a substantial portion of

8  the transaction at issue took place in Alameda County. Specifically, Plaintiff Lee purchased her

9  vehicle in Alameda County, which lies within this judicial District.

10         I declare under penalty of perjury under the laws of the United States that the foregoing

11  is true and correct.

12         Executed this 6th day of March, 2020 in San Francisco, California.

13

14

15                                          /s/ *Lesley E. Weaver*
                                            Lesley E. Weaver
16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT